Case 1:11-cv-05836-CBA-CLP Document 1 Filed 11/30/11 Page 1 of 12 PageID #: 1

SUMMONS ISSUED

PRESS COPY

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ NOV 30 2011 ★
BROOKLYN OFFICE

-------------------------------------------------------

LAVONG JOHNSON

          Plaintiff,

-against-

THE CITY OF NEW YORK, POLICE OFFICERS JOHN DOES 1 through 10, individually and in their official capacities (the name John Doe being fictitious, as the true names are presently unknown),

          Defendants.

-------------------------------------------------------- x

**COMPLAINT**

Jury Trial Demanded

CV 11 - 5836

AMON, CH.J.

POLLAK, M.J

## PRELIMINARY STATEMENT

1.     This is a civil rights action alleging that the City of New York and several New York City Police Officers violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, April 17, 2011, and Fourteenth Amendments to the United States Constitution. Specifically, plaintiff alleges that, on April 17, 2011, defendants falsely arrested him, employed excessive force, and made false allegations about him to the Kings County District Attorney's Office. Plaintiff seeks compensatory and punitive damages, attorneys' fees and costs, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2.     This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth, Sixth and Fourteenth Amendments to the United States Constitution, Article 1 of the New York Constitution, and New York common law. Jurisdiction is conferred upon this Court by 28

U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over the New York State claims pursuant to 28 U.S.C. § 1367

3. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 (b) and (c).

## PARTIES

4. Plaintiff is a citizen of the United States and a resident of Brooklyn in the City and State of New York.

5. The City of New York (the "City") is a municipal corporation organized under the laws of the State of New York.

6. Police Officer Morales ("Morales") is a member of the New York City Police Department who was acting under color of state law and in his capacity as a City law enforcement officers at all relevant times. Morales is liable for directly participating in the unlawful acts described herein and for failing to intervene to protect plaintiff from unconstitutional conduct. Morales is sued in his individual and official capacities.

7. Police Officers John Does 1-10 (the "officers" or the "Does") are members of the New York City Police Department who were acting under color of state law and in their capacities as City law enforcement officers at all relevant times. The Does are liable for directly participating in the unlawful acts described herein and for failing to intervene to protect plaintiff from unconstitutional conduct. The defendants are sued in their individual and official capacities.

## STATEMENT OF FACTS

7. On April 17, 2011, at approximately 1 p.m., Plaintiff was lawfully present at 312 Osborne Street in Brooklyn, New York, to visit his mother following Palm Sunday church services.

8. 312 Osborn Street is part of the Brownsville Houses, a New York City Housing Authority ("NYCHA") facility.

9. Plaintiff lived at 312 Osborne Street for approximately 17 years with his mother. Although he moved out shortly before the incident described below, he continued to receive his mail there.

10. Plaintiff entered the elevator and pressed the button for his mother's floor.

11. Defendant officers prevented the elevator doors from closing and Defendant Morales demanded Plaintiff's identification and reason for being on the premises.

12. Plaintiff presented his identification, which lists 312 Osborne Street as his home address. Plaintiff explained that he was going to visit his mother, who lives at 312 Osborne Street, and showed the officers the palm he brought from church.

13. Morales tossed the palm on the ground and repeated "I asked you what apartment you are going to."

14. Defendant Officers grabbed Plaintiff by the arm, shoved him against a wall, and twisted his arm, sending his glasses flying.

15. Defendant Officers punched Plaintiff in the ribs and applied mace and/or pepper spray.

16. Defendant Morales threw Plaintiff to the ground.

17. Defendant Officers summoned approximately 8 additional officers to the scene.

18. Plaintiff was transported to the 73rd Precinct, then to Brooklyn Central Booking, where he was charged with trespass and resisting arrest.

19. Defendant officers misrepresented to the Kings County District Attorney's Office that Plaintiff had committed the offenses of trespass and resisting arrest.

20. Plaintiff was arraigned in Kings County Criminal Court, at which time he was released on his own recognizance.

21. Plaintiff was deprived of his liberty, assaulted, battered, suffered emotional distress, mental anguish, pain, fear, anxiety, embarrassment, humiliation, and damage to his reputation.

22. On June 21, 2011, within 90 days of the events set forth above, plaintiff caused to be served on the Comptroller of the City of New York a Notice of Claim. To date, the City has made no adjustment or payment with respect to this Notice of Claim.

## FIRST CLAIM

### (§1983 FALSE ARREST)

21. Plaintiff repeats the foregoing allegations.

22. Defendants violated the Fourth and Fourteenth Amendments because they arrested plaintiff without probable cause.

23. Plaintiff was aware of his confinement and did not consent to it.

24. The confinement was not otherwise privileged.

25. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages alleged.

### SECOND CLAIM

4

**(STATE LAW FALSE ARREST)**

26. Plaintiff repeats the foregoing allegations.

27. Defendants violated the New York State Constitution and the laws of the State of New York because they arrested plaintiff without probable cause.

28. Plaintiff was aware of his confinement and did not consent to it.

29. The confinement was not otherwise privileged.

30. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages alleged.

**THIRD CLAIM**

**(§1983 UNREASONABLE FORCE)**

31. Plaintiff repeats the foregoing allegations.

32. Defendants violated the Fourth and Fourteenth Amendments because they used a degree of force on Plaintiff that was unreasonable because it was unnecessary under the circumstances.

33. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages alleged.

**FOURTH CLAIM**

**(STATE LAW ASSAULT AND BATTERY)**

34. Plaintiff repeats the foregoing allegations.

35. Defendants violated the New York State Constitution and the laws of the State of New York because they arrested, assaulted, and battered plaintiff, employing a degree of force unnecessary and unreasonable under the circumstances.

5

36. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages alleged.

## FIFTH CLAIM

### (§1983 FABRICATION OF EVIDENCE)

37. Plaintiff repeats the foregoing allegations.

38. The individual Defendants created false evidence against Plaintiff and forwarded such false evidence to the Kings County District Attorney's Office.

39. In creating such false evidence, the Defendants violated Plaintiff's constitutional right to a fair trial.

40. The aforesaid conduct by the City of New York violated Plaintiffs' rights under 42 U.S.C. § 1983 and the Sixth and Fourteenth Amendments to the United States Constitution.

**41.** As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages alleged.

## SIXTH CLAIM

### (§1983 "MONELL" CLAIM)

42. Plaintiff repeats the foregoing allegations.

43. The City, through policies, practices and customs, directly caused the constitutional violations suffered by Plaintiff.

44. The City, through its police department, has had and still has hiring, training, promotion and retention practices that it knows will lead to the hiring, training, promotion of police officers unable to discharge their duties in accordance with the constitution.

45. The City, through its police department, has a *de facto* quota policy that encourages unlawful stops, unlawful searches, false arrests, the fabrication of evidence and perjury.

46. The City, at all relevant times, was aware that these individual Defendants routinely commit constitutional violations such as those at issue here and has failed to change its policies, practices and customs to stop this behavior.

47. The City, at all relevant times, was aware that these individual defendants are unfit officers who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct.

48. Moreover, the City of New York has implemented and continues to conduct, enforce and sanction an unlawful vertical patrol and trespass arrest policy which has resulted in a pattern and practice of illegal stops, seizures, questioning, searches, and false arrests of authorized visitors to NYCHA residences.

49. The NYPD first implemented vertical patrols in 1991. The protocol was adopted to address crime, and specifically drug activity, in NYCHA residences. It is considered an "important component of the [NYPD]'s drug control strategy." (NYPD Patrol Guide Procedure 212-59).

50. In the course of a vertical patrol, multiple NYPD officers approach anyone they observe in the common areas of a building to affirmatively establish a connection to a specific building resident. If an individual stopped and seized pursuant to a vertical patrol fails to identify himself to the satisfaction of the officer, or is unable to demonstrate to the satisfaction of the officer, that he or she is going to, or coming from, a visit to a specific resident or his or her own home, he or she is arrested for trespass. If the individual has not already been searched for

7

contraband pursuant to the seizure, they are subjected to a search for contraband pursuant to their arrest.

51. The NYPD's policy amounts to a roving pedestrian checkpoint wherein NYPD officers indiscriminately stop, seize, question, and even search individuals in the common areas of NYCHA residences in the absence of individualized objective facts.

52. In 2005, the NYPD Housing Bureau alone conducted approximately 181,000 vertical patrols in NYCHA residences, and an average of 142,000 annually over the previous six years. *Testimony of Chief Joanne Jaffe, NYPD Housing Bureau*, New York City Council Committee on Public Safety and Subcommittee on Public Housing (November 2, 2006) at 24. These figures underestimate the actual number of vertical patrols, however, since NYPD officers outside of the Housing Bureau also patrol NYCHA residences, also conduct vertical patrols in NYCHA residences, and also arrest people for trespass in NYCHA residences.

53. In addition to directed or organized vertical sweeps in NYCHA residences, NYPD officers also sweep NYCHA residences for alleged trespassers on an informal basis.

54. Trespassing in public housing is a Class B misdemeanor under subsection (e) of NYPL Section 140.10, which was enacted in 1992, shortly after the inception of the vertical patrol program (L. 1992 ch. 434).

55. The number of trespass arrests in NYCHA residences has surged. The City has not provided any legitimate and neutral explanation for this rise in the arrest rate.

56. The NYPD Patrol Guide on vertical patrol provides NYPD officers no guidance on who is to be stopped, seized, questioned, searched or arrested for trespass. It simply directs uniformed patrol officers to "take note of unauthorized persons remaining in lobbies, basements, staircases and roof landings and take appropriate police action when necessary." (NYPD Patrol

8

Guide 212-60). Yet the vertical patrol provision contains no criteria for determining who is - and who is not - an "unauthorized person."

57. The vertical patrol policy and trespass arrest practices implemented by NYPD officers fails to require that an arresting officer act upon observed behavior that reliably differentiates a suspected trespasser or "unauthorized person" in a NYCHA hallway from a lawful visitor in transit or a building resident enjoying the common areas of his home. Given the large number of people legally permitted in a NYCHA residence, a police officer who is unfamiliar with the building residents and visitors cannot consistently or reliably differentiate between a suspected trespasser and a building resident enjoying the common areas of his home. Given the large number of people legally permitted in a NYCHA residence, a police officer who is unfamiliar with building residents and visitors cannot consistently or reliable differentiate between a suspected trespasser and a building resident, visitor, permittee, or licensee based on this policy.

58. Defendant's failure to provide adequate guidance, training, and support to NYPD officers regarding how to conduct vertical patrols, including whom to stop, question, seize, search, and arrest for trespass results in a *de facto* roving checkpoint and a pattern and practice of unlawful stops and seizures.

59. The only guiding principles provided to NYPD officers are consistent with, and reflective of, a policy, practice and custom of reckless arrests based on less than probable cause.

60. Under this policy, as written, people are or can be arrested for trying to visit someone who is not at home based solely on their mere presence in or around a NYCHA residence. People are also arrested in instances in which they know only their friend's first name or "street" name, or only know the apartment by the location rather than the number. Individuals

9

who remain silent upon questioning for trespass by NYPD officers are subject to arrest. This is even true if the only basis for the NYPD's questioning is the presence of that individual in a NYCHA common area.

61. Defendant's vertical patrol policy and trespass arrest practices, even if diligently followed, cause a pattern and practice of false arrests of many people who are lawfully on the premises. Without probable cause to suspect criminal activity, the individual is forced to defeat a presumption of guilt with the presentation of documents or witnesses at the time of arrest.

62. In addition to screening for suspected trespassers, another purported purpose of the vertical patrol program and trespass arrest practices is to screen and police NYCHA residents themselves. According to Inspector Michael C. Phipps, Commanding Officer, Housing Bureau Manhattan, the NYPD has the authority to arrest building residents and charge them with second degree trespass for entering certain areas of their own building, "namely, the roof landings, the rooftops, the store rooms, maintenance areas and basements." Testimony of Insp. Michael C. Phipps, New York City Council Committee on Public Housing (April 29, 2004) at 24 (Phipps Testimony). Inspector Phipps testified that "[w]hen tenants sign lease agreements with the Housing Authority, they are advised not to enter" these areas in their buildings. *Id.*

63. In fact, NYCHA leases do not contain any such clause. A NYCHA lease merely provides that, when given proper notice, tenants must comply with all lawful rules and regulations promulgated by the Landlord. For example, signs posted in or around lobbies of NYCHA residences, if any, may state "No Trespassing" or "Loitering and trespassing in lobby, roof, hallway and stairs is not permitted. Violators are subject to arrest and prosecution by the Police Department."

10

64. Trespassing is an offense which requires that a person unlawfully enter or remain in a prohibited area. There is no law prohibiting a resident's mere presence in or around the stairwells, hallways, roofs, or roof landings in his or her own apartment building. Indeed, there could be no lawful regulation or notice provision prohibiting entirely a resident's mere presence in his or her own hallway or stairwell.

65. Loitering also requires a specified unlawful purpose for being present at a location, such as "begging," P.L. section 240.35(1); gambling, P.L. section 240.35(2); sexual conduct, P.L. section 240.35(3); possessing a controlled substance, P.L. section 240.36; or engaging in prostitution, P.L. section 240.37.

66. Thus, there is no legal basis for wholesale stopping. seizing, questioning, searching and arresting individuals for mere presence in lobbies, roofs, hallways, and stairwells in and around NYCHA residences. Yet defendant has enforced, promoted, encouraged and sanctioned these customs and practices.

67. The City has failed to supervise and discipline NYPD officers who unlawfully stop, question, seize, search, and arrest individuals for trespass. On information and belief, Defendant does not monitor improper stops, seizures, and searches for trespass. Nor has the Defendant instituted any follow up procedure or disciplinary action when charges are dismissed or where it is otherwise established that an individual was arrested without probable cause.

68. These policies, practices and customs were the moving force behind Plaintiff's injuries.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

11

        a. Compensatory damages in an amount to be determined by a jury;

        b. Punitive damages in an amount to be determined by a jury;

        c. Costs, interest and attorney's fees;

        d. Such other and further relief as the Court may deem just and proper.

DATED: November 23, 2011
New York, New York

*[signature]*

ROBERT MARINELLI
Attorney at Law
305 Broadway, 14th Floor
New York, New York 10007
(212) 822-1427